## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JASMINE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| vs. | ) | |
| | ) | **JURY DEMAND** |
| MCLANE COMPANY, INC., | ) | |
| | | |
| Defendant. | | |

---

## **COMPLAINT**

## I. **JURISDICTION**

1.  This is a suit for relief from unlawful termination of employment instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.,* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.* The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

2.  Plaintiff Jasmine Harris ("Plaintiff") timely filed a charge of discrimination against defendant McLane Company, Inc. ("Defendant") with the U.S. Equal Employment Opportunity Commission within 180 days after the last act of discriminatory treatment.  Plaintiff has further filed this suit within 90 days after receipt of her right-to-sue letter issued from the EEOC.

## II.  PARTIES

3.  Plaintiff is a citizen of the United States over the age of nineteen and a resident of Houston County, Alabama.

4.  Defendant is a Texas corporation headquartered in Temple, Texas.

## III.  STATEMENT OF FACTS

5.  Plaintiff is female.

6.  In or about March of 2023, Plaintiff became employed by Defendant.

7.  Plaintiff worked at Defendant's facility in Cottonwood, Houston County, Alabama

8.  Plaintiff was employed as a loader.

9.  Plaintiff was the only female employee on the loading dock out of about 36 people.

10.  Plaintiff has and had during the events of this case a minor child.

11.  Plaintiff's minor child has and had during the events of this case a disability: cerebral palsy.

12.  As a result of the cerebral palsy, Plaintiff's child has, among other things, periodic seizures and diminished mental capacity such that the child is incapable of self-care and requires constant monitoring and care.

13. During her employment, Plaintiff had occasions where she was late to work because of her child's disability.

14. Plaintiff also missed a few days for this same reason.

15. Plaintiff always reported to her supervisors why she had been late or had to miss work.

16. In or about August of 2023, Earl Chatman became Plaintiff's supervisor.

17. Chatman is male.

18. Chatman was aware of Plaintiff's child's disability.

19. Whenever Plaintiff had to be late due to her child's disability, she always told Chatman the reason.

20. The same is true for Plaintiff's absences.

21. Chatman gave Plaintiff disciplinary actions for her tardies and absences.

22. The tardies and absences were caused by Plaintiff having to care for her disabled child.

23. Chatman was aware of this.

24. Shelby Carroll is a male who was employed by Defendant at the Cottonwood facility during the time Plaintiff was employed there.

25. Carroll and Plaintiff worked together.

26. Chatman was also Carroll's supervisor.

27.  Plaintiff drove Carroll to work every day.

28.  Chatman knew that Carroll rode to work every day with Plaintiff.

29.  On every single occasion when Plaintiff was late, Carroll was also late because he rode with her.

30.  Carroll also missed the days Plaintiff missed because he did not have a way to work.

31.  Chatman never gave Carroll any disciplinary actions for attendance when he gave them to Plaintiff.

32.  Carroll went to Chatman and Dimarco Hammick, another supervisor at the time, and asked them why he was not getting written up for attendance when Plaintiff was since they always rode together.

33.  Chatman and Hammick told Carroll that Plaintiff had a "situation" and needed to work on her time.

34.  Broadus Kirkland was Vice-President of Distribution at the Cottonwood facility.

35.  Kirkland was aware of Plaintiff child's disability.

36.  Kirkland was aware that the occasions when Plaintiff was tardy or absent were because of Plaintiff's child's disability.

37.  Kirkland was aware that Plaintiff was being given disciplinary actions for these occasions.

38.  Kirkland knew that Carroll rode to work every day with Plaintiff.

39.  Kirkland knew that Carroll was not being written up for attendance when Plaintiff was.

40.  Plaintiff asked Kirkland why Chatman did not give Carroll any disciplinary actions for attendance when he gave them to her since she and Carroll always rode together.

41.  Kirkland said the reason was that Plaintiff was the one driving.

42.  On or about January 23, 2024, Kirkland terminated Plaintiff.

43.  Kirkland said the reason was that Plaintiff had excessive attendance occurrences.

44.  Kirkland said that it was not his decision to terminate Plaintiff, that Chatman had gone over Kirkland's head to the corporate office and requested that Plaintiff be terminated.

45.  Kirkland knew that Carroll always rode to work with Plaintiff and that on every single occasion Plaintiff was late or missed work Carroll was, too.

46.  However, Carroll was not terminated.

47.  When he terminated Plaintiff, Kirkland asked her if she could still drive Carroll to work.

48.  Defendant never gave Carroll any disciplinary action for attendance during Plaintiff's employ.

49.  Defendant first gave Carroll a disciplinary action for attendance after it had received Plaintiff's EEOC charge.

50.  In doing so, Defendant went back and included days preceding Plaintiff's termination.

51.  There were other male employees who worked under Chatman who had numerous absences and no-call, no-shows, and Chatman never game them any attendance points either.

## IV.  CAUSES OF ACTION

### COUNT I

### TITLE VII

52.  Paragraphs 1-51 above are incorporated by reference.

53.  Defendant was an employer as that term is contemplated under Title VII during the events of this case.

54.  Defendant violated Plaintiff's rights under Title VII by terminating her employment because of her gender.

55.  Plaintiff pleads both a single-motive and mixed-motive theory.

56.  As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits, as well as emotional distress and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated Title VII;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate Title VII;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing her into the position she would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing back-pay and lost benefits, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT II

### ADA

57.  Paragraphs 1-51 above are incorporated by reference.

58.  Defendant was an employer as that term is contemplated under the ADA during the events of this case.

59.  Plaintiff's child's cerebral palsy constitutes a mental impairment under the ADA and did so during Plaintiff's employ with Defendant.

60.  Due to this impairment, Plaintiff's child was and is substantially limited with respect to the major life activities of caring for oneself, performing manual tasks, learning, reading, concentrating, thinking, communicating, and working, as well as the operation of the brain.

61.  Plaintiff's child is and was during the events of this case disabled under the ADA.

62.  Defendant violated Plaintiff's rights under the ADA by terminating her employment because of her association with her disabled family member.

63.  Plaintiff pleads both a single-motive and mixed-motive theory.

8

64.  As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing her into the position she would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing lost back-pay and benefits, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)   That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

Respectfully submitted,

s/ Adam M. Porter
Adam M. Porter
Attorney for Plaintiff
Adam M. Porter, LLC
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Voice and Text: (205) 322-8999
Facsimile: (205) 322-8915
Email: adam@adamporterlaw.com

Plaintiff requests trial by struck jury.

s/ Adam M. Porter
Attorney for Plaintiff

10